Nos. 14-5089, 14-5092, 14-5107

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

MARK R. RASMUSON, BRENDA S. RASMUSON, IVA MILLER, MARTIN
MEIER, DAVID A. JUST, CAROLYN J. JUST, DELTON DIXON, PLEASANT
VALLEY GOLF CLUB, INC., ROBERT AASTRUP, DONALD TAYLOR,
BETTY TAYLOR, DOROTHY M. JOHNSON, REX ENGERBRETSON,
JURGENS FARMS CORP., DEAN JURGENS, SCHUMACHER FARMS, INC.,
THOMAS FLOY, RICHARD STILLE, CURTIS STILLE, and PAMELA STILLE

*Plaintiffs-Appellees*,

v.

UNITED STATES

*Defendant-Appellant.*

2014-5089

Appeal from the United States Court of Federal Claims
Case No. 1:09-cv-00158 (Hon. Nancy B. Firestone)

**CORRECTED BRIEF OF PLAINTIFFS APPELLEES**

THOMAS S. STEWART
ELIZABETH G. MCCULLEY
BAKER STERCHI COWDEN & RICE, L.L.C.
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com
COUNSEL FOR PLAINTIFFS/APPELLEES

*(additional captions listed on inside cover)*

WILMA N. ADKINS, HOWARD BURROWS, GONNER FARM, LLC, JAN
ROSE FARM, INC., JAMES A. HARP, CLAYTON LINDSTROM, GAYLE
LINDSTROM, BOYCE L. LANGE, TRUSTEE, FRANK MARTIN, DAVID
CHONGO, CHRISTINE CHONGO, RONALD PINYAN, TODD MAURICE
JOHNSON, CURTIS MENNENGA, TRUSTEE, HOPE CHURCH OF THE
NAZARENE, RODNEY KNOX, PAMELA KNOX, RONALD GAULKE,
KAREN GAULKE, SHARON BURT, THOMAS BLAKE, MERRILL
GOERING, LINDA GOERING, JAMES A. BRADY, PATRICIA A.
BRADY, DAVID F. JOHNSON, MELLISSA S. CHAPPELLE, DALE
BARRETT, KATHLEEN BARRETT, RONNIE L. SMITH, DEBORAH A.
SMITH, DAVID E. BROONER, CYNTHIA L. BROONER, DOUG
SCHMELING, and JOHN T. CURPHEY

*Plaintiffs-Appellees,*

v.

UNITED STATES

*Defendant-Appellant.*

2014-5092

Appeal from the United States Court of Federal Claims
Case No. 1:09-cv-00503 (Hon. Nancy B. Firestone)

---

STEVE JENKINS, et al., for themselves and for a Class
of Similarly Situated Plaintiffs

*Plaintiffs-Appellees,*

v.

UNITED STATES

*Defendant-Appellant.*

2014-5107

Appeal from the United States Court of Federal Claims
Case No. 1:09-cv-00241 (Hon. Nancy B. Firestone)

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES.............................................................. iii

STATEMENT OF RELATED CASES ................................................ v

STATEMENT OF THE ISSUE ............................................................ 1

STATEMENT OF THE CASE ............................................................. 1

SUMMARY OF THE ARGUMENT...................................................... 2

ARGUMENT ...................................................................................... 4

I.   PLAINTIFFS' APPRAISERS FOLLOWED THE CORRECT APPRAISAL METHODOLOGY AND JUDGE FIRESTONE DID NOT ERR IN REJECTING THE GOVERNMENT'S ATTEMPT TO DEDUCT THE VALUE OF THE PHYSICAL REMNANTS IN THE BEFORE CONDITION .................................................................. 4

    A. All Appraisers Properly Did Before and After Appraisals and Properly Received the Instruction that the Appraisals Should Be Performed as "Unencumbered in the Before Condition"............................................... 4

    B. In Determining the Market Value of the Property in a Before and After Appraisal, the Physical Characteristics of the Land, and Any Physical Remnants of the Take, are Only Relevant to Determine the Highest and Best Use of the Land ............................................................. 7

    C. The "As Is" Language in the Yellow Book has Nothing to do with the Physical Remnants of the Railroad's Right-of-Way but, Instead, is Merely a Part of the Determination of the Highest and Best Use ............. 9

    D. The Government Actually Offers No Authority Whatsoever for Their Position Whereas Plaintiffs' Experts Followed the Correct Appraisal Methodology under the Yellow Book ...................................................... 15

II.   IT IS NOT ONLY LEGALLY INCORRECT TO CHARGE THESE
      LANDOWNERS FOR THE COST OF PHYSICAL REMNANTS LEFT
      BY THE EASEMENT, IT IS TOTALLY WRONG FROM A FACTUAL
      STANDPOINT AS WELL ........................................................................... 23

CONCLUSION ...................................................................................................... 28

# TABLE OF AUTHORITIES

*Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470 (1973) ................................................................................ 23

*Anna Nordhus Family Trust v. United States*, 98 Fed. Cl. 331 (Fed. Cl. 2011) ....... 6

*Board of County Supervisors v. United States*, 276 F.3d 1359 Fed. Cir. 2002) ................................................................................ 7-8, 23

*Boom Co. v. Patterson*, 98 U.S. 403 (1878) ........................................ 8, 13

*Ingram v. United States*, 105 Fed. Cl. 518 (Fed. Cl. 2012) ........................ 6

*Kirby Forrest Indus., Inc. v. United States*, 467 U.S. 1 (1984) ................... 7

*Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) ........................... 5

*Macerich Real Estate Co. v. City of Ames*, 433 N.W. 2d 726 (Iowa 1988) .......... 17

*Macy Elevator v. United States*, 97 Fed. Cl. 708 (Fed. Cl. 2011) ................. 6

*Minnesota Rate Cases*, 230 U.S. 352 (1913) ...................................... 23

*Olson v. United States*, 292 U.S. 246 (1934) .................. 5, 9-10, 12, 18, 23

*Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1980) .................. 6, 20

*Preseault v. Interstate Commerce Comm'n*, 853 F.2d 145 (2nd Cir. 1988) ......... 20

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ..................... 20

*Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011) ...................... 6

*United States v. 27.93 Acres of Land*, 924 F.2d 506 (3rd Circuit 1991) ......... 14

*United States v. 33.90 Acres of Land*, 709 F.2d 1012 (5th Circuit 1983) ........ 14

*United States v. 158.24 Acres of Land*, 696 F.2d 559 (9th Circuit 1982) ..... 14, 17

*United States v. 564.54 Acres of Land*, 441 U.S. 506 (1979) ............................... 13

*United States v. 77,819.10 Acres of Land*, 647 F.2d 104 (10th Circuit 1981)......... 14

*United States v. Commodities Trading Corp.*, 338 U.S. 121 (1950) ............... 13, 23

*United States v. Grizzard*, 219 U.S. 180 (1911)......................................................... 5

*United States v. Iriarte*, 166 F.2d 800 (1st Cir. 1948) ............................................. 17

*United States v. New River Collieries*, 262 U.S. 341 (1923) ................................... 10

*United States v. Powelson*, 319 U.S. 266 (1943) ....................................................... 8

*United States v. Virginia Electric Co.*, 365 U.S. 624 (1961) .................................... 5

*Vogelstein & Co. v. United States*, 262 U.S. 337 (1923) ........................................ 23

*Ybanez v. United States*, 98 Fed. Cl. 659 (Fed. Cl. 2011)........................................ 6

## OTHER AUTHORITIES

*Uniform Appraisal Standards for Federal Land Acquisitions* (the "Yellow
   Book") ........................................................................ 3-4, 6, 9-24, 28

## STATUTES

National Trail System Act Amendments of 1983, 16 U.S.C. § 1247(d) .................. 1

## STATEMENT OF RELATED CASES

No appeal from any of these civil actions has been before this Court or any other appellate court previously.  Undersigned counsel is not aware of any pending related cases pursuant to Fed. Cir. R. 47.5.

## STATEMENT OF THE ISSUE

Whether evidence of physical remnants left by the railroad's easement should reduce just compensation or is merely considered in the context of the highest and best use determination under proper appraisal methodology.

## STATEMENT OF THE CASE

These three consolidated appeals relate to the methodology utilized to determine damages for agricultural parcels in inverse condemnation actions. Plaintiffs alleged and the trial court agreed that the United States took Plaintiffs' reversionary property interests pursuant to the National Trail System Act Amendments of 1983[1] (hereinafter "Trails Act") and that damages for the taking should be established pursuant to the Just Compensation Clause of the Fifth Amendment. After extensive briefing on liability issues, summary judgment was granted for the Plaintiffs on liability in all three cases. Trial in all three cases was held in Des Moines, Iowa from August 5, 2013 through August 9, 2013. The United States did not contest liability at trial and does not contest liability now on appeal. As a result, the trial of these cases was conducted to determine the damages for the taking and the United States now appeals and asks this Court to

---

[1] *See* Pub. L. No. 98-11, § 208(c), 97 Stat. 48 (Mar. 28, 1983), *codified as amended at* 16 U.S.C. § 1247(d).

1

vacate the damages awards found by Judge Firestone for "certain"[2] agricultural parcels.

## SUMMARY OF THE ARGUMENT

The appropriate measure of damages in a Trails Act taking case is the difference between the value of the parent or larger parcel before the taking and the value of the remainder parcel after the taking. The before and after method of valuation is well-settled and is expressed as the difference between the market value of the land free of the railroad easement and the market value as burdened with the trail/railbanked easement. Here, in these three cases, all of the appraisals were before and after appraisals and the difference between the two were the ultimate damages found by Judge Firestone. In fact, the issue presented is not a pure legal question at all but, rather, is a mixed question of law and fact or a simple issue of expert opinion that was thoroughly addressed by the trial court.

In order to perform the before and after appraisals, all of the appraisers were properly given the instruction pursuant to Federal Circuit authority that the larger parcels in question should be appraised as if they were "unencumbered by an

---

[2] It is not entirely clear which agricultural parcels are subject to this appeal. It is also not clear why the United States has apparently appealed concerning "certain" agricultural parcels, whichever ones they turn out to be, and not others. In addition, it is not clear why the United States would attempt to appeal the result concerning "certain" agricultural parcels and not any residential or commercial parcels because, if the "physical remnants" of the railroad's easement were left behind and should be considered for certain agricultural parcels, the "physical remnants" were also left behind and should be considered for the residential and commercial parcels too.

easement in the before condition." Three of the appraisers who testified at trial on behalf of all of the Plaintiffs, who have appraised over a million acres of agricultural land and have performed agricultural appraisals in over 20 prior Rails-to-Trails cases, properly performed appraisals without reducing the before value because of the purported physical remnants that were left behind. The only appraiser who attempted to deduct the value of the physical remnants in the before condition was the government's appraiser, who had no experience whatsoever in agricultural appraisals or Rails-to-Trails cases.

Plaintiffs' appraisers properly considered the physical characteristics of the land in the context of determining the highest and best use of the land as set forth in the *Uniform Appraisal Standards for Federal Land Acquisitions* (the "Yellow Book"). Under longstanding authority, the physical characteristics of the land are only relevant to determine the highest and best use of the land for appraisal purposes. The legal standard for the appraisers was to determine if the land taken, given the physical characteristics and physical remnants, was both physically adaptable for such use and that it could be easily converted to such use. There is simply no authority whatsoever for the proposition that these Iowa farmers should be charged for the costs to make the land adaptable and, in fact, the government's attempt ignores and contradicts longstanding authority and violates several provisions of the Yellow Book.

The government's attempt to deduct the costs of "restoration" in the before condition is not only incorrect legally, it is grossly improper from a factual standpoint as well.  The government's appraiser attempted to consider some physical characteristics and not others, attempted to make adjustments without foundation or directly contrary to testimony from the government's own expert agronomist, and his entire testimony should have been stricken.  Pursuant to the correct appraisal methodology as set forth in the Yellow Book, the three appraisers for Plaintiffs followed the proper appraisal methodology, the government's appraiser did not follow the proper appraisal methodology, and Judge Firestone did not err by disallowing reductions for the physical evidence of the abandoned railroad corridors when valuing Plaintiffs' agricultural parcels in the before condition.

## ARGUMENT

### I. PLAINTIFFS' APPRAISERS FOLLOWED THE CORRECT APPRAISAL METHODOLOGY AND JUDGE FIRESTONE DID NOT ERR IN REJECTING THE GOVERNMENT'S ATTEMPT TO DEDUCT THE VALUE OF THE PHYSICAL REMNANTS IN THE BEFORE CONDITION

#### A. All Appraisers Properly Did Before and After Appraisals and Properly Received the Instruction that the Appraisals Should Be Performed as "Unencumbered in the Before Condition"

Federal courts, under longstanding precedent, have held that the appropriate measure of damages in a partial takings case is the difference between the value of the larger parcel before the taking and the value of the remainder parcel after the

taking. *United States v. Virginia Electric Co.*, 365 U.S. 624, 632 (1961); *Olson v. United States*, 292 U.S. 246, 253 (1934); *United States v. Grizzard*, 219 U.S. 180, 185-86 (1911). When the property interest actually taken from the larger parcel is the reversionary interest amounting to the right to have the land unencumbered by an easement, the proper measure of damages is still the before and after method of valuation, which is expressed as the difference between the market value of the larger parcel free of the easement and the market value as burdened with a new easement. *Virginia Electric*, 365 U.S. at 630; *Olson*, 292 U.S. at 253.

Both primary appraisers, Mr. Nelson for the Plaintiffs, and Mr. Schulte for the government, utilized the before and after methodology (although Mr. Schulte improperly valued the before and after value). In addition, both primary appraisers also received an instruction from Judge Firestone, as has been given in all prior Rails-to-Trails cases, that the larger parcels should be appraised as "unencumbered in the before condition" and encumbered with a perpetual easement for a hiking and biking trail with the possibility of reactivation of a railroad in the after condition. This Court, in *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010), made it quite clear in Rails-to-Trails cases that the NITU "forestalls or forecloses the landowners' right to **unencumbered** possession of the property." The Federal Circuit again affirmed that when a railroad obtained an easement for railroad purposes and a NITU blocks the reversionary interests of the property owner's

rights to the use of their land unencumbered by an easement, a taking occurs requiring just compensation. *Ladd*, 630 F.3d at 1023.[3]

Mr. Nelsen correctly interpreted the instruction of "unencumbered in the before condition." Plaintiffs' counsel did not instruct Mr. Nelsen to disregard any of the physical characteristics created and left by the railroad but, instead, Mr. Nelsen disregarded the physical characteristics based on his own interpretation of the instruction "unencumbered in the before"[4] just as Plaintiffs other appraisers, David Matthews and Doug Hodge, had done before him.[5] Mr. Schulte's appraisals violated the instruction "unencumbered in the before condition" and violated longstanding precedent concerning the proper appraisal methodology and the proper use and consideration of the presence of certain physical conditions left by the railroad upon abandonment which violates several provisions of the Yellow Book and appraisal standards.

---

[3] *See also Macy Elevator v. United States*, 97 Fed. Cl. 708 (Fed. Cl. 2011); *Ybanez v. United States*, 98 Fed. Cl. 659 (Fed. Cl. 2011); *Anna Nordhus Family Trust v. United States*, 98 Fed. Cl. 331 (Fed. Cl. 2011) (*quoting Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1980)) *Raulerson v. United States*, 99 Fed. Cl. 9, 12 (Fed. Cl. 2011); *Ingram v. United States*, 105 Fed. Cl. 518, 541 (Fed. Cl. 2012) (holding "[t]he measure of just compensation to the plaintiffs for the takings of plaintiffs' property should capture the value of the reversionary interests in their 'before taken' condition, unencumbered by the easements").
[4] *See* A2495-96.
[5] *See* A2458, A2464-65 (Matthews); A2569-70 (Hodge).

**B. In Determining the Market Value of the Property in a Before and After Appraisal, the Physical Characteristics of the Land, and Any Physical Remnants of the Take, are Only Relevant to Determine the Highest and Best Use of the Land**

The taking of private property for public purposes requires that the landowners be put in as good a position pecuniarily as if their property had not been taken. *Olson*, 292 U.S. 246. In order to determine the ultimate amount of just compensation to be received, courts must determine the fair market value of the property on the date of the take. *Kirby Forrest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984). In assessing the fair market value of the property taken, the critical element is the determination of the highest and best use of the property at issue. *Board of County Supervisors v. United States*, 276 F.3d 1359, 1364 (Fed. Cir. 2002) (*quoting Olson*, 292 U.S. at 255).

The determination of the highest and best use of the property at issue, which is critical to any determination of market value, is certainly not a new principle. In *Olson*, as early as 1934, the Supreme Court specifically stated that:

> Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. **The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed** or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.

*Olson*, 292 U.S. at 255 (emphasis added).

Under this clear and longstanding precedent, in order to establish the highest and best use of the property to ultimately determine the fair market value for just compensation purposes, the landowners must show a "reasonable probability that, at the time of the taking, <u>the land was both physically adaptable for such use</u> and that there was a need or demand for such use in the reasonably near future." *Board of County Supervisors*, 276 F.3d at 1365 (emphasis added). Under the highest and best use standard as enunciated by the Supreme Court and confirmed by the Federal Circuit, the trial court does not confine its inquiry to "the use to which the property [was] devoted" at the time of the taking, but also considers "<u>that use to which it may be readily converted</u>."[6]

There is and can be no dispute in these three Rails-to-Trails cases involving agricultural land in Iowa, that the land at issue was both physically adaptable and easily converted to the highest and best use of agricultural land. The issue for the appraisers to determine was the highest and best use of the land at issue such that the legal question for the appraisers to answer was whether the land taken within the abandoned railroad right-of-way was both physically adaptable for agricultural land and could be readily converted to agricultural land. Every appraiser who

---

[6] *See United States v. Powelson*, 319 U.S. 266, 275-76 (1943) ("the value [of the condemned lands] may be determined in light of the special or higher use of the land when combined with other parcels; it need not be measured merely by the use to which the land is or can be put as a separate tract"); *see also Boom Co. v. Patterson*, 98 U.S. 403 (1878) (holding that highest and best use should be "viewed not merely with reference to the uses to which the land is at the time applied, but with reference to the uses to which it is plainly adapted").

8

testified during trial, including the government's own appraiser, readily and easily concluded that the highest and best use of the parcels in dispute, both before and after, was agricultural land, and that the land within the railroad's right-of-way was easily adaptable and could be readily converted back to agricultural land.

The government's attempt to avoid this clear legal principle that the physical remnants of the railroad's right-of-way should only be considered in the context of determining the highest and best use of the land, is directly contrary to binding precedent. The government's novel attempt to then charge the landowners for the costs to restore the area within the railroad's right-of-way back into the highest and best use of agricultural land is incorrect legally under longstanding precedent and is fatally flawed factually as well.

### C. The "As Is" Language in the Yellow Book has Nothing to do with the Physical Remnants of the Railroad's Right-of-Way but, Instead, is Merely a Part of the Determination of the Highest and Best Use

Both primary appraisers, Mr. Nelson and Mr. Schulte, received an instruction that the appraisal should be performed pursuant to the Yellow Book. The Yellow Book, which was originally prepared for appraisers to promote uniformity in the appraisal of real property among the various agencies acquiring property on behalf of the United States, was first published in 1971. A3458-59. In essence, the Yellow Book is merely an attempt to codify guidelines for appraisals based on federal case law, including *Olson* and its progeny, and specifically states:

"[T]he ascertainment of compensation is a judicial function, and no power exists in any other department of the government to declare what the compensation shall be or to prescribe any binding rule in that regard' because the meaning of just compensation is a matter of fundamental constitutional interpretation, and the ability to make binding interpretations of the Constitution rests only with the United States Supreme Court."

A3492, Yellow Book, § B-2 at p. 32 (*citing United States v. New River Collieries*, 262 U.S. 341 (1923). With respect to the physical characteristics and physical remnants left by the taking of the railroad's right-of-way, the Yellow Book merely codifies the fact that the physical remnants are only relevant to the determination and conclusion of highest and best use as set forth in *Olson* and its progeny. There is no provision in the Yellow Book to charge the landowners or to deduct the purported costs to put the land into the highest and best use.

The government never cites *Olson* or any other cases dealing with the legal standards involved when determining the highest and best use. Instead, the government attempts to extrapolate the "as is" language within the Yellow Book concerning the highest and best use of the land into "as is" conditions, including rails, ties, and ballast, that must somehow be deducted from the value of the larger parcel in the before condition.[7] The term "as is" is actually found within the Yellow Book in two separate locations, specifically relating to the determination of market value and the highest and best use of the land, and has absolutely nothing to

---

[7] *See* Appellant's Br. at pgs. 2, 5, 10, and 16.

do with the physical remnants, or charging the landowners for the physical remnants, or deducting the cost of the conversion of the physical remnants from the appraisal in the before condition.

The first reference to "as is" occurs in Section A-7, dealing with general appraisal reporting standards, and specifically states that "the adoption of an uninstructed assumption, or hypothetical condition, that results in evaluation of other than the '*as is*' market value of the property appraised as of the effective date of the appraisal will, as a general rule, invalidate the appraisal for government acquisition purposes." A3471. The example utilized in the Yellow Book addresses the inclusion of an assumption that property is free of contamination from hazardous substances when the property is actually, in fact, contaminated with hazardous substances. The hypothetical condition that Plaintiffs' appraisers adopted that the railroad right-of-way did not exist in the before condition because the property was "unencumbered in the before condition" is just like the Yellow Book example. This reference in the Yellow Book contained in Section A-7 has absolutely nothing to do with the physical remnants of the railroads' right-of-way standing alone, let alone the government's attempt to deduct the cost of the "improvements" from the value of the land in the before condition.

The other reference to "as is" in the Yellow Book is contained in Section A-15 and specifically states that "in applying this technique, appraisers must bear in

mind that a property being appraised must be valued in its 'as is' condition." A3479. This reference to "as is" is directly and specifically related to the highest and best use determination and specifically states that "the appraiser shall estimate the value of the land for its highest and best use, as if vacant and available for such use." *Id.* The example given in the Yellow Book is an example where an appraiser takes raw land at one value and concludes that the larger parcel, like agricultural land, actually has a different highest and best use for subdivision purposes for residential sales.

These references to "as is" in the Yellow Book merely codify the fact that the federal courts for years have held that the critical determination is the highest and best use of the land and the "as is" condition referred to in the Yellow Book specifically and directly relates to the highest and best use of the land. The government's novel attempt to totally disregard *Olson* and its progeny and then to expand the "as is" reference to something beyond a mere determination by the appraiser of the highest and best use of the land should be flatly rejected.

Section B-2 of the Yellow Book recognizes this distinction of "use" when making a determination of the highest and best use. After recognizing that the courts have never attempted to prescribe a rigid rule for determining what just compensation is, and after stating that market value has normally been accepted as

a just standard,[8] the Yellow Book states that "these Standards are based on the premise that the compensation for federal land acquisitions will be measured by the relatively *objective working rule*[9] of market value as established by the Supreme Court over 100 years ago"[10] and "it is also for that reason that appraisers are instructed by these Standards to estimate the market value of property being acquired by the government rather than to estimate the just compensation due for the property acquired." A3493. The important and guiding principle is that the government acquired farmland, which was the highest and best use of the land taken, rather than a narrow strip in the middle of an Iowa farm acquired for a hiking and biking trail.

Similarly, Section B-3 of the Yellow Book, which is the actual section devoted to the determination of the highest and best use of the land taken, specifically and directly codifies longstanding precedent on this subject. Section B-3 specifically states that "market value is to be determined with reference to the property's highest and best use," "if the property is clearly adaptable to a use other than the existing use, its marketable potential for such use should be considered to the extent that potential affects market value," and that "a proposed highest and best use requires a showing of reasonable probability that the land is both

---

[8] A3492, *citing United States v. Commodities Trading Corp.,* 339 U.S. 121, 123 (1950).
[9] A3492,-93, *citing United States v. 564.54 Acres of Land,* 441 U.S. 506, 511 (1979) (emphasis in original).
[10] *Id., citing Boom Co. v. Patterson,* 98 U.S. 403, 408 (1878).

physically adaptable for such use **and** that there is a need or demand for such use in the reasonably near future; the physical adaptability alone is insufficient."[11] Thus, under longstanding precedent and under the Yellow Book itself, the inquiry concerning the physical characteristics of the railroad's right-of-way for appraisal purposes, in the context of the highest and best use determination, must be to see if the parcel, including railroad's right-of-way, is "physically adaptable" for agricultural use and that there is a need or demand for such agricultural use in the near future.

In these three cases, all of the appraisers, including Mr. Schulte for the government, clearly and easily determined that the land was physically adaptable for agricultural use and there shouldn't be any doubt, as testified to by Mr. Stille, that there was not only a demand by every Iowa farmer to reclaim every inch of possible Iowa farmland, but that it could reasonably be converted back to agricultural use in a very short period of time.[12] Simply put, there is no legal authority whatsoever for the proposition that the cost of making the railroad right-

---

[11] A3494-95, *citing Olson*, 292 U.S. at 255; *United States v. 27.93 Acres of Land*, 924 F.2d 506, 512 (3rd Circuit 1991); *United States v. 33.90 Acres of Land*, 709 F.2d 1012, 1014-1015 (5th Circuit 1983); *United States v. 158.24 Acres of Land*, 696 F.2d 559, 563 (8th Circuit 1982); *United States v. 77,819.10 Acres of Land*, 647 F.2d 104, 110 (10th Circuit 1981).

[12] *See* A25. Judge Firestone concluded that "contrary to Mr. Schulte's opinion, he [Stille] would reclaim the former rail line if it would avoid diagonal cuts through the property and allow him to farm in straight lines" and that Stille "had personal experience reclaiming land for row cropping and found that it could be done with relative ease."

of-way adaptable for agricultural use is a proper appraisal technique and it is not supported by the Yellow Book either.

### D. The Government Actually Offers No Authority Whatsoever for Their Position Whereas Plaintiffs' Experts Followed the Correct Appraisal Methodology under the Yellow Book

The government's brief is almost void of any authority whatsoever. The government never cites to any of the well-established precedent concerning the determination of highest and best use and never cites to any of the applicable provisions of the Yellow Book either. Worse than that, however, the government makes broad and sweeping statements of purported law in an attempt to buttress their argument that the cost of the physical remnants left by the railroad's right-of-way should be charged against the landowners without any precedent whatsoever.

First, with no legal authority whatsoever, the government states that "if Union Pacific had abandoned the railroad easements on Plaintiffs' property between 2003 and 2005, no law or deed would have forced the company to remove its rail bed and ties, break up and haul off track ballast, re-grade the railway corridor to match the surrounding farm land, or fertilize the underlying soil to undo more than a century of damage." Appellant's Br. at p. 9. Besides being totally irrelevant, if the railroad had abandoned the railroad corridor between 2003 and 2005 without utilizing the Trails Act, this lawsuit obviously would not have been necessary. It is, after all, the Trails Act itself which is the statute that requires the government to utilize the correct appraisal standards to treat the railroad corridor to

match the surrounding farmland since the highest and best use of the land is indeed agricultural.  There is simply no authority anywhere for the proposition that the cost to remove rails or ties, haul off ballast, or fertilize the soil should be charged back against the victim of the take.

Second, the government states that "when an easement is abandoned, the servient estate is not entitled to receive the underlying property in the same physical condition that it would have enjoyed absent the easement, unless a statute or the easement deed so requires."  Appellant's Br. at p. 10.  Without citing any authority whatsoever for that statement, it is not a question of whether these farmers can receive the underlying property back, which is what they absolutely want, because the Trails Act has intervened and the land has already been taken from them.  As demonstrated under longstanding precedent and the Yellow Book itself, the "physical condition" under longstanding precedent and the Yellow Book is relevant merely to ascertain whether the land which was taken is readily adaptable back to farm use.

Third, the government states that "neither Plaintiffs nor the trial court identified any legal obligation of Union Pacific to restore the topography of an abandoned railway corridor, return the soil to an agriculturally-productive state, or even remove the rail bed, rail ties, and track ballast."  Appellant's Br. at p. 10.  It is simply not a question or legal issue as to whether the Union Pacific or anyone else

had to restore the topography of the abandoned railroad corridor because, in fact, under the Trails Act, it cannot be restored because it is railbanked and must be preserved for the possible future speculative use as a railroad again. Although the government cites *Macerich Real Estate Co. v. City of Ames*, 433 N.W. 2d 726, 729-30 (Iowa 1988) for the proposition that state law gives the railroad the right to remove track material upon abandonment, whether the railroad had a legal obligation or a duty to remove track materials under either federal law or state law is totally irrelevant to the appraisal methodology at issue. The proper appraisal methodology merely requires a legal finding that the land taken can be physically adapted and converted into the same highest and best use.

Fourth, the government argues that "in determining just compensation, it is 'patent error' for a court to disregard 'the expense of development' necessary to prepare a landowner's property for its highest and best use." Appellant's Br. at p. 11. Although the government cites *United States v. Iriarte*, 166 F.2d 800, 804 (1st Cir. 1948) and *United States v. 158.24 Acres of Land*, 696 F.2d 559, 564 (9th Cir. 1982), these cases and this argument actually relate to developing subdivisions out of one larger parcel, in essence a change of use for appraisal purposes, and are actually supportive of the proposition that this is merely a question concerning the highest and best use of the land. The "development approach" is specifically mentioned in the Yellow Book in Section A-15 pertaining to the highest and best

use of the land and these cases merely reinforce the proposition that an appraiser may consider "the expense of development" whenever a conclusion is reached that the highest and best use of the property is for subdivision purposes and comparable sales do not exist where adjustments to comparable sales are normally made. A3479. These cases flatly do not have anything to do outside the context of highest and best use and do not stand for the proposition that these Iowa farmers should be charged for the cost of restoration to put the land in its overall highest and best use under the appropriate appraisal methodology.

Fifth, after acknowledging that Judge Firestone concluded that the physical conditions or physical remnants of the railroad's right-of-way are relevant "only with regard to determining highest and best use,"[13] the government goes on to state that "whether or not the physical condition of an abandoned railway corridor is relevant in determining highest and best use, it is decidedly relevant when valuating the work needed to prepare property for its highest and best use." Appellant's Br. at p. 15. This is the fatal flaw with the government's entire position because, although the physical condition of the right-of-way is relevant in determining the highest and best use under *Olson* and all of its progeny, it is NOT

---

[13] *See* A26, n. 23 ("To the extent the Yellow Book requires any consideration of the former rail corridor, which the court is not persuaded is necessary in rails-to-trails cases, the court finds that Mr. Hodge's explanation is sound and that the existence of the former corridor is relevant only with regard to determining highest and best use. Once, as in these cases, the appraiser determines that agricultural use is the highest and best use, examination of the former corridor is not required.")

"decidedly relevant when valuating the work needed to prepare property for its highest and best use" other than to determine if it is physically adaptable and convertible to that highest and best use. There is simply no authority whatsoever from any source that the cost of making it adaptable to its highest and best use should be charged to the landowner in the before condition.

Mr. Nelsen, Plaintiffs' primary appraiser, received an instruction pursuant to the Yellow Book, as has been given in all prior Rails-to-Trails cases, that the larger parcel should be appraised as "unencumbered in the before condition" and encumbered with a perpetual easement for a hiking and biking trail with the possibility of reactivation of a railroad in the after condition.[14] Plaintiffs' counsel did not instruct Mr. Nelsen to specifically disregard any of the physical characteristics originally created and left by the railroad but, instead, Mr. Nelsen disregarded the physical characteristics based on his own interpretation of the instruction "unencumbered in the before condition and on his understanding of highest and best use under the Yellow Book."[15]

David Matthews, who also testified for the Plaintiffs concerning the proper appraisal methodology, is one of the most prominent appraisers in the United

---

[14] *See* A2472, A2474, A2496.
[15] *Id.* Mr. Nelsen testified that the physical components left by the railroad's easement should only be considered in the context of a determination of highest and best use because, to do otherwise as Mr. Schulte attempted to do, was contrary to his 28 years of experience doing eminent domain appraisals, contrary to the Yellow Book, and would not be accepted by the Department of Transportation, the City of West Des Moines, the City of Des Moines, and any other community authorities in Iowa.

States and is, undoubtedly, the preeminent appraiser in the United States with respect to Rails-to-Trails cases. Out of the entire population of Rails-to-Trails cases, David Matthews has been hired in over 19 of them. Beginning in 1998, including appraisal consulting in the *Preseault* cases,[16] Mr. Matthews has served at least 8 times as a joint appraiser in several states and at least 10 times as an appraiser for the landowners in numerous states. He has also appraised well over 1,000,000 acres of agricultural land during his lengthy career and has also been hired by the Department of Justice to investigate and report on railroad widths and the construction of rights-of-ways across the country.[17]

David Matthews specifically testified that, whenever he received an instruction to perform agricultural appraisals as unencumbered in the before condition, he has never considered the "overburden" left by the railroad upon abandonment.[18] The Yellow Book supports Mr. Matthews' interpretation because the Yellow Book states that an appraiser should value "what" was taken from the landowner and, here, it is their right to their land unencumbered by a railroad easement because a railroad easement necessarily includes all of the man-made conditions created and pertaining to that easement.[19]

---

[16] *See Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990); *Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996); *Preseault v. Interstate Commerce Comm'n,* 853 F.2d 145 (2nd Cir. 1988).

[17] *See A2455-56* for a complete narrative history of Mr. Matthews' experience and qualifications.

[18] *See* A2458, A2464-65.

[19] *See* A3548, Yellow Book, § D-8, at p. 88.

If David Matthews is the preeminent appraiser in the United States involving Rails-to-Trails cases and agricultural appraisals, Doug Hodge is a close second. Besides the fact that Mr. Hodge wrote a book on rural land appraisals, he was jointly hired by Plaintiffs and the government in three Rails-to-Trails cases involving agricultural parcels.[20]  In each and every case, Mr. Hodge received an instruction that the land was to be considered as unencumbered in the before condition and, in each and every case, he testified that he did not consider the physical conditions left by the railroad upon abandonment in the before condition based on proper appraisal methodology and his interpretation of the instruction.[21]

The only appraiser in the entire case who did consider the physical man-made conditions created by the railroad was Mr. Schulte.  Although he received an instruction that the appraisals were to be performed pursuant to the Yellow Book and as if the parcels were unencumbered in the before condition,[22] Mr. Schulte refused to adopt a hypothetical condition concerning the "as is" market value of the property in the before condition as it relates to highest and best use[23] and instead considered some of the physical characteristics created by the railroad during the construction and use of the right-of-way, including the railroad bed, ballast, slopes

---

[20] *See* A2566-67 for a complete narrative of Mr. Hodge's experience and qualifications.
[21] *See* A2569-70.
[22] *See* A2594, A2596-97, A2601.
[23] *See* A2601-02.  Mr. Schulte is the only appraisal in the entire country who has not accepted a hypothetical condition in a Rails-to-Trails case when receiving an instruction of unencumbered in the before condition.

and ditches, soil impaction, and resulting flawed CSR[24] adjustments.[25]  In short, Mr. Schulte's methodology violates the instruction of "unencumbered in the before condition," is contrary to longstanding precedent on proper appraisal methodology, is contrary to several provisions contained within the Yellow Book, and is contrary to every appraisal ever performed in all other Rails-to-Trails cases involving agricultural land.

Judge Firestone, after a week-long trial, in a thoughtful and thorough opinion, rejected Mr. Schulte's testimony and appraisal methodology and the argument now advanced by the government in this appeal.   Judge Firestone specifically ruled that "to the extent the Yellow Book requires any consideration of the former rail corridor, which the Court is not persuaded is necessary in rails-to-trails cases, the Court finds that Mr. Hodge's explanation is sound and that the existence of the former corridor is relevant only with regard to determining the highest and best use." A-26, n. 23.  Doug Hodge, David Matthews, and Gene Nelsen were correct in their appraisal methodology as codified in the Yellow Book and based on longstanding precedent, and Mr. Schulte and the government herein

---

[24] *See* A27-28.  "CSR" stands for either "corn suitability rating" or "crop suitability rating."  Mr. Schulte attempted to make minute adjustments to comparable sales and to the value of each agricultural parcel based on the quality of the soil, which not only violated the Yellow Book but also lacked any foundation whatsoever and were directly contrary to the testimony of the government's agronomist.

[25] *See* A2596-2601 for Mr. Schulte's nonsensical testimony concerning what physical conditions he considered, all of which were created by the construction and use of the railway easement, and which he did not, like rails and ties, even though he admitted he would have and should have had he known they were present when the NITU was issued or if he was a landowner himself.

were and are incorrect.   Judge Firestone was merely following longstanding precedent and the correct methodology as explained in the Yellow Book and, not only did not err, she was absolutely correct.

## II.   IT IS NOT ONLY LEGALLY INCORRECT TO CHARGE THESE LANDOWNERS FOR THE COST OF PHYSICAL REMNANTS LEFT BY THE EASEMENT, IT IS TOTALLY WRONG FROM A FACTUAL STANDPOINT AS WELL

These Iowa farmers are entitled to be in put in as good a position pecunarily as if their property had not been taken.  It is the property that is protected and not the cost of it that is safeguarded by the United States Constitution.[26]   The constitutional requirement of just compensation has to be derived from basic equitable principles of fairness as it does from technical concepts of property law.[27] The valuation principles as established in the Yellow Book require the physical characteristics to be considered within the determination of the highest and best use of the land taken but not as a reduction against the landowner in the before condition.  In fact, the physical remnants left by the railroad and the resulting cost of restoration have never been appropriate factors to be charged against any landowner when their land has been taken from them[28] when determining the highest and best use and just compensation.  In fact, not only is the government's

---

[26]  *See Vogelstein & Co. v. United States*, 262 U.S. 337, 340 (1923); *Minnesota Rate Cases*, 230 U.S. 352, 454 (1913).

[27]  *See United States v. Commodities Trading Corp.*, 338 U.S. 121, 124 (1950); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 477 (1973).

[28]  *See Board of County Supervisors v. United States*, 276 F.3d 1359 (Fed. Cir. 2002)(cost of a road or the relocation of a road not charged against the landowner).

position wrong legally, it is also wrong factually in this context because, if anything, the various physical remnants left by the railroad should actually be added to the land in the before condition.

The only appraiser in the entire case who did consider the physical man-made conditions created by the railroad was the government's appraiser, Mr. Schulte.    Although he received an instruction that the appraisals were to be performed pursuant to the Yellow Book and as if the parcels were unencumbered in the before condition,[29] Mr. Schulte improperly interpreted "as is" under the Yellow Book, ignored the requirement to value the property in its established highest and best use, and refused to adopt a hypothetical condition concerning the "as is" market value of the property in the before condition.[30]   Instead, Mr. Schulte attempted to consider some of the physical characteristics created by the railroad during the construction and use of the right-of-way, including the railroad bed, ballast, slopes and ditches, soil impaction, and resulting speculative and flawed CSR adjustments and not others.[31]

As a practical matter, the rails and ties, if they had been considered, actually enhanced the value of the land substantially because they always have very significant salvage value.    Likewise, the ballast is also a significant asset for

---

[29] *See* A2594, A2596-97, A2601.
[30] *See* A2601-02.  Mr. Schulte is the only appraiser in the entire country who has not accepted a hypothetical condition in a Rails-to-Trails case when receiving an instruction of unencumbered in the before condition.
[31] *See* A2596-2601.

farmers on and around their acreage.   Although Plaintiffs appreciate the government's total retreat from Mr. Schulte's adjustments for CSR values, the fact of the matter is that CSR values have no relevance whatsoever outside adjustments that were made for comparable sales as Judge Firestone readily and correctly concluded.   As a result, the only "physical remnant" that is even potentially relevant to this discussion in these cases and these appeals are slight topography changes created when the railroad pushed dirt around to form the original right-of-way.   Differences in slope exist on every farm in Iowa and, as Mr. Stille testified, the "physical remnant" of the slope could be corrected in an afternoon with a bulldozer.[32]

Mr. Schulte's methodology charged the farmers the cost to reclaim their own land based on the physical conditions left by the railroad and, as a result of his improper methodology, he subtracted whatever speculative cost he concluded to reclaim from the value of the land in the before condition and thus minimized the gap or difference between the ultimate before and after value, which ultimately deprived these landowners of their just compensation.   In addition, however, without any foundation whatsoever, Mr. Schulte stacked improper inference upon improper inference and recalculated a new CSR, or a different CSR on the

---

[32] *See* A2869.

property,[33] in both the before and after situation, and then attempted to make an

upward adjustment on land values in the after condition allegedly based on an

improved CSR, which increased the value in the after condition and also narrowed

the gap between the before value and the after value, also attempting to deprive

these landowners of just compensation. The government's entire argument now,

despite their attempt to portray a very narrow legal issue for purposes of remand, is

nothing more than a ruse to deprive these Iowa farmers from their just

compensation.

In an attempt to suggest that the cost of restoration would be significant

upon remand or in individual situations, the government actually offered three

photographs in their brief.[34] These photographs offered by the government, out of

hundreds reviewed by Judge Firestone, actually provide great evidence of the

lunacy of the government's position that the physical remnants left by the railroad

should be charged against these Iowa farmers:

> (1) The first photograph[35] from the *Rasmuson* case shows a portion of
> the railroad bed next to Curt Stille's home, as opposed to the
> agricultural portion of the parcel. More importantly, the
> photograph is taken at least 10 years after the property was actually

---

[33] The government has now made a complete retreat from Mr. Schulte's testimony. *See* Appellant's Br. at p. 16. But, with respect to Mr. Schulte's use of CSR values, his testimony is particularly egregious not only because it was contrary to proper appraisal methodology but it was also totally unsupported from a factual standpoint and was directly contrary to the testimony from Mr. Gomes, the government's expert agronomist. *See* A27-28. Mr. Schulte's testimony should have been stricken in its entirety and Plaintiffs made numerous requests and attempts to do so.
[34] *See* pgs. 20-22 of Appellant's Brief.
[35] *See* Figure 1 at p. 20 of Appellant's Brief.

taken and, as Curt Stille testified, it did not look anything like that 10 years ago because the railroad would not allow vegetation to grow on the right-of-way and it had been 10 years since it had been maintained.[36] In addition, there is no stream in the photograph, the stream that runs through Curt Stille's land at a different location was properly analyzed by both appraisers, the rails and ties have been removed and not added to the value of the property, Curt Stille wants to utilize the ballast for other purposes around his parcels, and whatever elevation that exists would and could easily be removed to reclaim valuable Iowa farm land.[37]

(2) The second photograph[38] is a more typical shot of Iowa farm land. It is taken on parcel 19 owned by Schumachers Farms, Inc. in the *Rasmuson* case and purportedly shows a "creek" running along the elevated portion of the right-of-way.  First, this photograph demonstrates that any Iowa farmer would and could reclaim this land for farming operations in a matter of a few hours through a process common to farmers called "tiling."  Second, there is no creek in this photograph and, instead, a slight drainage problem exists <u>because</u> the right-of-way operates as a dam for the normal draining that would ordinarily occur.  As Curt Stille testified, any Iowa farmer would welcome the moisture and would "tile" that area to remove any pooling that would occur so that the land could be reclaimed in short order.[39]

(3) The third photograph[40] shows an abandoned railway bridge over parcel 5.B for some reason.  This parcel is owned by Marcia Schlicting Wilson in the *Rasmuson* case.  The railroad bridge shown in the photograph must be retained under the Trails Act because the corridor has been railbanked and, if the government is somehow contending that the area of the bridge itself is a "physical remnant" that must be charged against the landowner, then the argument must fail because the bridge actually has nothing to do with any of the issues presented in this case.  In fact, the photograph demonstrates that the right-of-way in this area is

<hr>

[36] *See* A2868-73.
[37] *Id.*
[38] *See* Figure 2 at p. 21 of Appellant's Brief.
[39] *See* A2869.
[40] *See* Figure 3 at p. 22 of Appellant's Brief.

basically flat and that any Iowa farmer would immediately reclaim and farm the entire area on both sides of the right-of-way.

Judge Firestone treated the appraisal methodology issues as a mixed question of law and fact. From a legal standpoint, the "physical remnants" left by the railroad should only be considered as part of the determination of highest and best use when an appraiser assessed the larger parcel as a whole. From a factual standpoint, the government's presentation was fatally flawed based on a consideration of some of the physical characteristics and not others and then by subtracting the value of some of the physical remnants and attempting to charge these farmers to restore their land so it can be immediately farmed.

## CONCLUSION

During a week-long trial involving just compensation issues involving agricultural parcels, Judge Firestone heard detailed and extensive testimony from four appraisers. Three appraisers for the Plaintiffs correctly analyzed and applied proper appraisal methodology and the government's appraiser did not. Under longstanding legal precedent and specific appraisal guidelines as set forth in the Yellow Book, the physical remnants of the railroad's easement should only be considered within the context of the determination of highest and best use. The test of highest and best use depends on the adaptability of the land taken to be converted back into the highest and best use. Here, there is no dispute that the land taken is easily and readily adaptable to an agricultural use. There simply is no

legal authority in support of the government's attempted argument to charge these Iowa farmers for the purported costs to adapt or convert the land back into its highest and best use and, in fact, the government's attempt to do so is directly contrary to longstanding legal precedent and appraisal methodology guidelines.

Judge Firestone did not err and, in fact, was absolutely correct in making her determination that the physical remnants of the railroad's right-of-way should only be considered in the context of the appraiser's determination of highest and best use. Judge Firestone's conclusions of just compensation for certain agricultural parcels should be summarily affirmed.

/s/ *Thomas S. Stewart*
Thomas S. Stewart
Elizabeth G. McCulley
BAKER STERCHI COWDEN & RICE, L.L.C.
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com
COUNSEL FOR PLAINTIFF/APPELLEES

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type volume limitation set forth in Rule 32(a)(7)(b) of the Federal Rules of Appellate Procedure. Accepting the portions of the brief described in Fed. R. App. P. 32(a)(7)(B)(3) and Fed. Cir. R. 32(b), the brief contains 8,892 words.

I also certify that this brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared using Microsoft Word 2013 in a proportionately-spaced typeface using Times New Roman, 14 pt.

/s/ *Thomas S. Stewart*
Thomas S. Stewart
Elizabeth G. McCulley
BAKER STERCHI COWDEN & RICE, L.L.C.
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com
COUNSEL FOR PLAINTIFF/APPELLEES

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2014, I filed the foregoing corrected brief with the United States Court of Appeals for the Federal Circuit using the CM/ECF system. All case participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/ *Thomas S. Stewart*
Thomas S. Stewart
Elizabeth G. McCulley
BAKER STERCHI COWDEN & RICE, L.L.C.
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com
COUNSEL FOR PLAINTIFF/APPELLEES

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Rasmuson, et al.         v. United States

No. 2014-5089

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Rasmuson                certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

See attached list of appellees

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.  ☐  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Thomas S. Stewart, Elizabeth McCulley
Baker Sterchi Cowden & Rice, LLC

_10/29/14_
Date

_Thomas S. Stewart_
Signature of counsel

Thomas S. Stewart
Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

| Property Owner Name |
| --- |
| Kenneth Smalley |
| Dean Jurgens |
| Marcia Schlichting Wilson |
| Paul and Phyllis Willis |
| Gloria Floy Troeger |
| Duane Mabb |
| Lori Floy Harrington |
| John Ingebretson |
| Scott Engebretson |
| Phillip and Nancy McLaughlin |
| North Iowa Cooperative Elevator c/o Chuck Schafer |
| Darrell and Betty Kolb |
| Pleasant Valley Golf Club, Inc. |
| Larry and Pamela Kruger |
| Thomas Floy |
| Delmar and Martha Brady c/o Doug Brady |
| Iva Miller |
| Schumachers Farms Inc. c/o Nettie Chaffin |
| Mark and Brenda Rasmuson |
| Edward Caspers |
| Jurgens Farms Corp. c/o Mr. Kevin Jurgens |
| Curtis & Pamela Stille |
| David Meinders |
| D & J Corporation, c/o Dale Caspers |
| A & A Green Acres, Inc. c/o David Atkinson |
| Donald and Betty Taylor |
| David & Carolyn Just |
| Donald and Bonnie Bonner |
| Martin Meier |
| Dorothy Johnson |
| Patricia Markwardt |
| Constance Sue Bieber, c/o R.L. Bieber |
| John Carstens |
| Janet Rodemeyer |
| Alan Carstens |
| Robert Aastrup and Verna Aastrup |
| Young Farms, Inc. c/o J M F Accounting |
| Bruce and Sharon Evans |
| Terry and Rita Hansen |
| Delton & Le Ann Dixon |

| Property Owner Name |
| --- |
| Maureen Pals c/o Cindy Tekampe |
| Charles A. and Beverly A. McMurray |
| John and Cathy McMurray |
| Barbara K. Petersen |

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Adkins, et al.                              v. United States

No. 2014-5092

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Adkins                              certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

See attached list of appellees

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.  ☐  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Thomas S. Stewart, Elizabeth McCulley
Baker Sterchi Cowden & Rice, LLC

_____10/29/14_____
Date

_Thomas S. Stewart_
Signature of counsel

Thomas S. Stewart
Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

| Property Owner Name |
| --- |
| W. Nevin Harmon and Bonita Jean Harmon, Randy and Pamela Zinck |
| Thomas Blake |
| Triple J of Ankeny, LC<br>c/o Allen F. Johnson |
| Sharon Burt, Karen R. Huggans, Ronald Mayner<br>Beth Ann Roy and Steve Roy, and Charles Hale |
| Wilma N. Adkins |
| Merrill and Linda Goering |
| Audre Ferrier, Trustee of the Helen Moekley Trust |
| James E. and Patricia R. Brady |
| Gonner Farms, LLC<br>c/o John Gonner |
| Melvin and Karen Flanders |
| Dale and Kathleen Barrett |
| Raymond J. and Diane Conway |
| Marion L. Carlson and Nyra Carlson |
| Jan-Rose Farm, Inc. |
| Robert and Kathy Houge |
| James A. Harp |
| Young Investments, LC, Donald Young/Trust,c/o Carter Young |
| Rosalie Lund and Kenneth Lund |
| Thomas and Deanna Jones |
| John Thomas Curphey and Richard Martin Curphey |
| Jissom, Inc. |

Form 9

FORM 9.  Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Jenkins, et al.                              v. United States

No. 2014-5107

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Jenkins                            certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

See attached list of appellees


2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None


3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None


4.  ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Thomas S. Stewart, Elizabeth McCulley
Baker Sterchi Cowden & Rice, LLC

10/29/14
Date

*Thomas S. Stewart*
Signature of counsel

Thomas S. Stewart
Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

| PROPERTY OWNER NAME |
| --- |
| Sanemah Enterprises Inc, c/o Sam Herr |
| Petersen, LLC, c/o Rich Petersen |
| William Fox Farm Company |
| Bruce Kuehl |
| Harold Morris Trust |
| John Charles Morris, Carol Sue Hilton, Marilyn Marie Dowell, Suzanne Yates, Harold Morris Trust |
| Tom, Mark and Dan Barrett |
| Shattuck Corporation, c/o Tom Shattuck |
| Bestenlehner Trust, c/o Francis Bestenlehner |
| Berneice Hopkins, c/o Gail Hopkins POA |
| Rhinehart Farms Inc., c/o Charles Rhinehart |
| Eby Land Company, c/o William and Karen Eby |
| Wilma J. Pollard Revocable Trust |
| Mitchell Land Development LLC/Master Crafted Homes |
| Spurgeon Manor, Inc., c/o Karl Eby |
| Max and Jeanne Wineland |
| Jeff and Theresa Kuehl |
| Farmers Cooperative Company, c/o Brian Bailey |
| James Fox |
| Steve Jenkins |
| Daniel and Sandra Raitt |
| Terry Masengill and Katherine Willis |
| Pamela Chance |
| Claud Shields Trust |
| Kenneth Renfrow |
| Kenneth E. Lilly |
| Hy-Line International |
| c/o Thomas Jorgensen |
| Allen and Anne Winter |
| Gale and Gloria Haldeman |
| Midwest Oil Seed, Inc., c/o Harry Stine |
| Royer Family Farm Partnership |
| Richard and Florence DeBoest Revocable Trust |
| Elsie Rittgers and John Rittgers Trust |
| Stine Seed Farm Inc., c/o Harry Stine |
| Minburn Properties, c/o William Bishop |
| Linda Graham |
| Paul Purviance Trust, c/o Nadine Weiser |
| Bern Boyett |
| Minburn Cooperative Elevator, c/o Brian Bailey |
| Heartland Co-Op, c/o Larry Petersen |
| Randy O. and Sharon K. Wright |
| Adel-Desoto-Minburn Community School District, c/o Shirley McAdon |

| |
|---|
| Mark and Beth Erb |
| William H. Burkett |
| Wasser, Marilyn C & J Dean Trustees of the Marilyn C Wasser Revocable Trust |
| Vivian F. Birdsall Estate, c/o Linda Tronvold |
| Harriet L. Schnoor Revokable Trust |
| c/o Carl Schnoor and Sue Omestad |
| Donald  Burg and Leo Burg |
| Michael and Randa Fagen |
| F. William Beckwith |
| Struyk's Slopes, Inc |
| Dave and Sue Roush, Helen McLean and Edna Young |
| Eden Enterprise Inc., c/o Harry Stine |
| Roger and Jane Dorman |
| Margaret Rowe, c/o Craig Carrick, and Edith Lindquist |
| Rickie and Judy Huitt |
| Ronald Bender, Joy Hawbaker, Nancy Luckow |
| Doris V Bender Revocable Trust, c/o Robert Bender |
| Jerry and Vicki Lage |
| Daniel Stebbins |
| Mitchell Family Trust c/o Lester and Elva Mitchell |
| Helen Fazel |
| |
| Central Iowa Regional Housing Authority, c/o Marcy Conner |
| Charles and Melba Mehis |
| Anatasio Galván |
| Steven Welch and Jamie Grove |
| Estate of Richard Gittins |
| Walter and Brenda Pettry |
| Morris A. Michaelsen Estate, c/o Katie McGee |
| Perry Auto Center, c/o Ronald Coleman |
| David Whiton and Marc Whiton |
| Whiton Feed & Milling Company |
| Terrill Farms, c/o Martin Terrill |
| James and Ramona Birdsell |
| Estate of Gladys Wilma Hancock, c/o Beth Hodges |
| Donald and Edna Arnold, c/o Jeanice Anderson and Jolene James |